CHARLES R. DE BEVOISE

*v.*

THE H. & W. Co. et al.

[Filed June 9th, 1904.]

1. To justify a bill in equity for an accounting, the issues must be so numerous, so distinct, and the evidence to sustain them so variant, technical and voluminous, that a jury is incompetent to deal intelligently with them and come to a just conclusion.

2. A bill to redeem a pledge cannot be maintained without some additional ground of equitable jurisdiction.

3. Discovery in equity is given only as incidental to other relief sought, as to which complainant has no adequate remedy at law.

On rule to show cause why injunction should not issue, argued on bill of complaint and answering affidavits.

*Mr. Edward G. Adams,* for the complainant.

*Mr. Albridge C. Smith,* for the defendants.

BERGEN, V. C.

It appears from the bill of complaint that the complainant served until November 17th, 1903, as the president of the defendant company, and as one of its directors until the 10th day of December, 1903, the stockholders, at their annual meeting, held on that day, refusing to re-elect him as a director; that the compensation to be paid the complainant for his services as president was fixed by a resolution of the board of directors, adopted December 13th, 1903, as follows: "A salary of $2,000 per annum, to be paid in monthly installments, and in addition to get twenty-five per cent. of the net profits, after ten per cent. for dividends on outstanding stock be set aside." That in ascertaining the net profits for the year ending December 10th, 1903, it is alleged an injustice was done the complainant in the following particulars—*first,* in taking the inventory of the stock of goods, "manufactured and unmanufactured," because they were inventoried at a price below their real value to an amount in excess of $1,700; *second,* that while the complainant had agreed that twenty per cent. of the book value of the machinery, tools and fixtures should be deducted from their cost, as they stood on the books, to represent depreciation, the board of directors, in ascertaining the net profits, calculated such twenty per centum upon the sum of $10,300 instead of upon the sum of $9,468.55, that being the amount, according to the complainant's claim, to which the book value of the machinery

account had been reduced by previous credits of like character, the excess being $166.29, of which the complainant would be entitled to twenty-five per cent.; *third,* that the directors, in ascertaining the net profits, first deducted from the gross profits $5,000, as a reserved fund to offset a like amount standing on the books of the company to represent the value of patents, trade marks, &c., and as a part of its capital stock account. It further appears in the bill of complaint that the complainant, while president and one of the directors of the company, and on the 25th day of June, 1903, borrowed from the company $1,000 and "deposited" with the treasurer of the company twelve shares of the capital stock of the defendant company as "collateral security," the loan to be repaid on or before January 1st, 1904; that no such payment was ever made, and as an excuse for the default the complainant charges that upon an accounting it will be found that the company is indebted to him in the sum of $782.82, after charging him with the amount of the loan; that he had demanded payment of the $782.82 and also the return of his stock certificate; that the defendants not only refused to comply with this demand, but threaten to sell the stock in satisfaction of the loan. The prayer of the bill is for a discovery of the contents of the books of the defendants relating to their profit and loss account for the year ending December, 1903, and of certain entries in the minutes of the proceedings of the corporation; and also that an accounting may be had to determine the amount due to the complainant for services as president, and that for this purpose the annual inventory, taken November 30th, 1903, may be corrected under the direction of this court, and that the deduction for depreciation of machinery may be calculated upon the sum of $9,468.55, instead of the amount used by the directors; and also that the said sum of $5,000 be deducted from the earnings only after twenty-five per cent. of the net profits have been set apart for the complainant; and further, that the defendants be enjoined from selling the stock pledged for the loan and be decreed to deliver the same to the complainant and pay him $782.82.

This is the complainant's case fully stated, and I fail to see

the slightest ground for equitable interference. He bases his claim for equitable relief upon two grounds—the necessity for an accounting and discovery. 1 have considered the question of the complainant's right to require the defendants to account in this court, and am fully convinced that the legal remedy is so plain, ample and effective that the right to exercise a discretion and retain this bill for the purpose of an accounting cannot be supported. If it could, then every case where a pledge has been deposited as collateral for the payment of a debt would be the subject of equitable jurisdiction. In this case the creation of the debt, the borrowing, the date of the loan, the amount and non-payment, according to the terms of the agreement, are all confessed. The complainant seeks to excuse the non-payment because he claims the defendant is indebted to him in a larger amount growing out of a separate transaction, and that having such counter-claim he is entitled to have it set off against his debt and the defendant decreed to pay the surplus due on his claim. Waiving the question whether in any event he can release the lien against the pledge, without at least tendering in his bill of complaint his readiness to pay whatever may be found due on an accounting, no such offer appearing in the bill of complaint, I will dispose of the claims of the complainant as he presents them. First, he says the inventory of the goods and stock is unfair to the extent of $1,700. It is manifest that no inventory could now be taken, if desired, of the stock of goods, "manufactured and unmanufactured," as it existed nearly a year ago; most, if not all of it, must have been disposed of in the regular course of business, and recourse could only be had to the books of the company showing the original inventory, and these books are within reach of a court of law; nor is the complainant in any doubt about the amount of the undervaluation, as he fixes it at $1,700, and by reference to the answering affidavits, to which I will refer hereafter, it is plain that the only real dispute is as to the percentage to be taken from the sum of the appraisement of the goods in stock, and that the ascertainment of the undervaluation is simply a matter of calculation, when the legal principle governing the com-

plainant's contract is established or the custom of the trade in like cases be proven. It is not a question of complicated accounting, but of fact and law. If the defendants were justified in reducing the appraised valuation by deducting the percentum, which they did, before ascertaining the amount due the complainant, then he would have no ground of complaint; if, under the contract, it was unlawful to first make such deduction, then he is entitled to have the amount so deducted restored.

The next item complained of is the deduction for the depreciation of the machinery. Whether this deduction was properly made depends upon a single item appearing upon the books of the complainant, and that is the cost of the machinery as shown by the books; a glance at the account will disclose the fact. The third claim is that $5,000 was deducted for the extinguishment of a patent account. Certainly no equity is required to determine this claim; once the legal question is settled, all doubt vanishes. The amount in dispute is $1,250; there is no uncertainty about that, for if, under complainant's contract, as a matter of law, the $5,000 should not be deducted before the ascertainment of his share of the profits, then he is entitled to a credit of $1,250, otherwise the defendants are sustained in their claim of the right to deduct that sum at the expense of the complainant. The complainant, so far from needing an accounting, states in his bill of complaint the precise balance due him, viz., $782.82, and undoubtedly he arrived at this sum by deducting $936.24, the amount remaining due on the loan, from twenty-five per cent. of $6,866.29, the sum of the three disputed items, the result agreeing so nearly with the sum claimed as to warrant that conclusion. According to the settled law in this state, to justify an equitable accounting the accounts must be so complicated and intricate that a court of law cannot deal with them properly, having regard to the rights of litigants; if it can, the superior right of that court to hear and determine such matters is recognized. *Bellingham* v. *Palmer, 54 N. J. Eq.* (*9 Dick.*) *136,* and in *Cranford* v. *Watters, 61 N. J. Eq.* (*16 Dick.*) *284,* Vice-Chancellor Pitney, after a most exhaustive consideration of this question, formulated

what seems to me a true and satisfactory test to be applied to the question whether the account is such as to give equity jurisdiction in the following words: "Are the issues so numerous and so distinct, and the evidence to sustain them so variant, technical and voluminous, that a jury is incompetent to intelligently deal with them and come to a just conclusion?" Tested by this rule, the complainant has not presented such a state of facts as to confer equity jurisdiction. The issues are not numerous, the evidence required to sustain them is not variant, technical or voluminous, and a jury could come to a just conclusion. Another ground for discharging this rule is the fact that, except the question as to the deduction of the $5,000 before ascertaining the amount due to the complainant, and as to which the complainant has an undoubted legal remedy, the affidavits presented by the defendants entirely overcome the case made by the bill. The inventory of November, 1903, of which the complainant complains, it is shown, was made in the usual manner, and only the customary deductions for depreciation made; that after it was completed, and on the 9th day of December, 1903, there was a meeting of the board of directors, at which complainant was present and acting as a member, and that he did not object to nor protest against the inventory or the methods employed in its preparation, nor to the deduction made, although at the same meeting he did object to and vote against another proposition affecting the amount of his compensation.

It further appears from the affidavits that the complainant is entirely mistaken in regard to the book value of the machinery, and that $10,300 was its book value, as it stood on the books of account of the defendant company, November 30th, 1903. It is not charged that the defendant is insolvent, and the presumption, therefore, is that any judgment the complainant might obtain at law can be enforced. There is one other claim made by the complainant, and that is of a right to the aid of this court in the redemption of his pledge. Under certain conditions that right most certainly exists, but the required circumstances are not present, and besides, if the complainant

wishes to avail himself of this right he must offer to pay whatever may be due on his debt to secure which the pledge was deposited. This he neglects to do. To maintain a bill in equity to redeem a pledge, some special ground must be shown, as that an accounting or discovery is wanted, as ordinarily his remedy is at law. *2 Story Eq. Jur. 1032.* The necessity for an accounting must be real; there must be a series of transactions on both sides, and not merely one item on one side, and a number of offsets on the other. *Jones on Pledges § 557.* What this complainant seeks is to have set off against his admitted debt three items, the respective amounts of which he knows and states, and the balance due him he gives with exactness; nor are the amounts, excepting as to the charge for depreciation on the machinery account, contested by the defendants; the real dispute is over the application of the law to written contracts and agreements. To maintain an equitable offset, some equitable ground for protection must be shown; a counter demand alone is not enough. *Hewitt* v. *Kuhl, 25 N. J. Eq. (10 C. E. Gr.) 24.* If the complainant is right in his contention as to the state of the accounts between these parties, the refusal to deliver upon demand the certificates of stock amounts to a conversion, for which the defendants are liable at law. If their refusal to deliver is not justified, and if the pledgee should sell the stock improperly, he would be subject to the payment of all damages the pledgor might suffer.

Having determined that the case as presented by the complainant does not entitle him to the relief asked, it follows that his prayer for discovery, and as to which he waives answer under oath, furnishes no ground for equitable jurisdiction, the single purpose of the discovery being in aid of the relief sought, as to which his legal remedy is perfect. *Miller* v. *Ford, 1 N. J. Eq. (Sax.) 365; Metler* v. *Metler, 18 N. J. Eq. (3 C. E. Gr.) 270; S. C. affirmed, 19 N. J. Eq. (4 C. E. Gr.) 457.* The claim the complainant makes is for the payment of money; he does not charge accident, mistake, fraud or other essential ground for equitable jurisdiction. The legal remedy being ample, the accounting sought for falling within the class properly subject to

the jurisdiction of a court of law, and no right of discovery appearing, it follows that a preliminary injunction ought not to be allowed.

This leads to the discharge of the rule to show cause, and I will advise accordingly.